**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02665-PAB

**HUMAN RIGHTS DEFENSE CENTER**,

      Plaintiff,

v.

**BOARD OF COUNTY COMMISSIONERS FOR ADAMS COUNTY, COLORADO**,
**RICHARD REIGENBORN**, Sheriff, in his official and individual capacities,
**CHRIS LAWS**, Jail Division Chief, in his individual capacity, and
**DOES 1-10**, in their individual capacities.

      Defendants.

_____
_____

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
_____

Defendants, Board of County Commissioners for Adams County, Colorado, Sheriff

Richard Reigenborn, and Chris Laws, by and through their attorney, Kerri A. Booth, Assistant

County Attorney, Adams County Attorney's Office hereby respond to Plaintiff's Motion for

Preliminary Injunction (hereinafter "Motion") [Doc. # 5] as follows:

**<u>INTRODUCTION</u>**

Plaintiff, Human Rights Defense Center (hereinafter "HRDC") publishes and distributes

two monthly periodical publications, namely *Prison Legal News* and *Criminal Legal News* to

individuals incarcerated in jails and prison across the country.  Motion, pp. 3-4.  This case stems

from HRDC's contentions that that mail, in the form of its two periodical publications, sent to

inmates at Adams County Detention Facility (hereinafter "ACDF") has been improperly

1

returned.

HDRC seeks a preliminary injunction based on alleged violations of its First and Fourteenth Amendment rights.  Specifically, Plaintiff alleges that Defendants unconstitutionally rejected or failed to deliver 32 issues of its publications to incarcerated persons at the ACDF from June, 2019 through April, 2020.  HDRC also alleges that Defendants denied HDRC due process by failing to give notice of the rejections coupled with an opportunity to appeal.

Defendants assert that they have not violated HDRC's constitutional rights and that the issuance of a preliminary injunction in this case is unwarranted and improper.

## LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Defense Council, Inc.*, 555 US. 7, 20 (2008)); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)).

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

## ARGUMENT

"[A]preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)(emphasis in original). To make the required "clear showing", a plaintiff must do more than merely allege entitlement to injunctive relief.  The burden is on the party challenging "the validity of prison regulations" to prove that they are invalid, and the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Here HRDC has not met its burden demonstrating an entitlement to injunctive relief. Plaintiff's Motion is unsupported by facts and contains only conclusory statements as to the alleged violations and the alleged injury it sustained.

**A.      HRDC has not established a likelihood that it will succeed on the merits of its underlying claims.**

1.      First Amendment Claim

A prison policy violates the First Amendment where the plaintiff shows that the policy is not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In making this determination, the court looks to: (1) whether the regulation is rationally related to a legitimate and neutral government objective, (2) whether inmates have alternative avenues of exercising their rights, (3) the impact that accommodating the right will have on guards and other prisoners, and on the allocation of prison resources, and (4) whether the

existence of easy and obvious alternatives indicates that the regulation is an exaggerated response. *Id.* at 89-90.  As such, a jail can control the distribution of mail to incarcerated persons so long as the applicable policies meet the *Turner v. Safely* standard.  *Thornburgh v. Abbott,* 490 U.S. 401, 404 (1989).

In this case, Plaintiff has shown that ACDF does have a mail policy and a policy regarding and defining contraband, but Plaintiff does not demonstrate that those ACDF policies are akin to a policy of censoring all HRDC's publications and mailings.  ACDF's policies as noted by Plaintiff do not *carte blanche* reject every issue of *Prison Legal News* or *Criminal Legal News*.  Instead, each item received at the ACDF is process individually to determine whether the specific item poses a risk to the facility's penological interests.  Generally, HRDC's publications are being distributed, in accordance with ACDF's policy, to those incarcerated persons who are in the facility and who have requested a subscription to the periodical. Therefore, Plaintiff has not shown that it is being censored in violation of its First Amendment rights.

### 2.    Due Process Claim

In order to prevail on a due process claim, the plaintiff must show that the prison officials did not give senders of censored mail notice or an opportunity to appeal.  *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). "[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards," which requires only that "the author of that letter be given a reasonable opportunity to protest that decision…." *Id.* at 417-18.

In this case, HRDC has not demonstrated that it was deprived of notice or an opportunity to protest. Defendants dispute that Plaintiff's characterization of the contents of their stamps accurately reflect the content of the stamps or notes on each of the alleged 34 returned items. However, for purposes of this Response, the characterization of the exact content of the stamps or notes is largely irrelevant because for each piece of mail that was allegedly censored, Defendants sent the item back to HRDC along with a stamp providing a basis for the return. As noted by Plaintiff, in some cases these stamps were augmented by a brief written note providing more information regarding the reason for the return. Motion, pp. 6-7. Plaintiff argues that Defendants' process falls short of providing legally sufficient notice, but Plaintiff fails to provide support for this contention. On its face, if HRDC received returned mail stamped with "REFUSED" it stands to reason that HRDC was notified that the inmate that the mail was addressed to refused to accept the item. Likewise, if the item was returned marked "RETURN TO SENDER: Items Enclosed are NOT Accepted Through Facility Mail" coupled with a handwritten note "Staples" it stands to reason that HRDC was provided notice that the item was returned because it contained staples.

Further, Plaintiff concludes without any support that HRDC was not provided a mechanism to challenge ACDF's "censorship decisions." HRDC alleges that the first rejection of *Prison Legal News* by ACDF occurred in June, 2019, and in the time since that first alleged rejection HRDC has not called ACDF and inquired about the reason for the rejection or to challenge the legality of such rejection. HRDC cites to 32 alleged incidents of receiving returned mail. This provided them with at least 32 opportunities to call or write to ACDF to discuss and dispute the alleged "censorship"; however, HRDC fails to demonstrate any facts tending to show

that it actually tried to challenged the rejections.  Further, HRDC makes no claim that it reached

out to ACDF and challenged the rejections, or that Defendants were unresponsive.  As such,

Plaintiff has not shown that it is likely to prevail on its due process claim.

**B.    HRDC does not establish it will suffer irreparable harm.**

"The purpose of a preliminary injunction is not to remedy past harm."  *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1267 (10th Cir. 2005).  As such the irreparable harm inquiry focuses on

whether the plaintiff has demonstrated a significant risk it will suffer irreparable injury before a

court can render a final decision on the merits of the case.  *See id.; Great Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1258 (10th Cir. 2003).  "To constitute irreparable harm, an injury

must be certain, great, actual and not theoretical*."  Heideman v. S. Salt Lake City*, 348 F.3d

1182, 1189 (10th Cir. 2003).  The "party seeking injunctive relief must show that the injury

complained of is of such imminence that there is a clear and present need for equitable relief to

prevent irreparable harm." *Schrier,* 427 F.3d at 1267 (*quoting Heideman*, 348 F.3d at 1189).

HRDC states "[t]he irreparable harm suffered by HRDC is concrete, severe, and

ongoing."  Motion, p. 17.  HRDC states that it is harmed because Defendants will continue to

censor it by rejecting or returning *Prison Legal News* or *Criminal Legal News,* but it has not

alleged facts that support this claim.  HRDC states that it is irreparably harmed in a conclusory

manner that is unsupported by a factual basis.  HRDC has not presented evidence of the ongoing

or continuing harm it suffers from.  Plaintiff argues that it is unable to reach inmates at the

ACDF by virtue of the mail and contraband policies, but this is unsupported.  Plaintiff does not

demonstrate that all of its mailings are returned or rejected or that ACDF has a policy of

censoring Plaintiff in general.  Instead, Plaintiff provides as support of its irreparable harm five

instances of mail being returned.  The most recent example provided by HRDC is of a rejection

that occurred in November, 2019.  This does not establish an ongoing harm.  At best, the facts

presented by Plaintiff may show a past harm (although Defendants dispute this contention).

HRDC argues that the first instance of censorship occurred in June, 2019; however, this Motion

was not filed until September 1, 2020, over a year later.  This delay tends to support Defendants'

position that Plaintiff will not suffer irreparable harm if a preliminary injunction is not granted[1].

C. **A balancing of the hardships and the public interest favor denial of a**

**preliminary injunction.**

The Adams County Detention Facility is one of the larges metro area jails in Colorado.  If

a preliminary injunction were issued in this case, it would force the ACDF to immediately

overhaul its entire system for receipt, processing, and distribution of inmate mail.  This would

pose a significant burden on Defendants.  This burden is especially apparent when Plaintiff has

not presented facts demonstrating that such process renovation is necessary.

Further, while the public has an interest in ensuring that inmates housed in the ACDF can

access mail and periodicals, there is an even stronger public interest in ensuring the safety of

inmates in the ACDF by ensuring that dangerous and hazardous items and materials are not

introduced into ACDF via the mail system.  An injunction that would force Defendants to

suddenly and quickly overhaul the ACDF's entire mail system would compromise the interest

the public has in the safety of people incarcerated in the Adams County Detention Facility.

---

[1] *See*, *e.g.*, *Prison Legal News v. County of Cook*, Case No. 16-cv-6862, 2016 U.S. Dist. LEXIS 160780 at *34 (N.D. Ill. Nov. 21, 2016) (PLN's request for injunctive relief "is severely undermined by the fact that plaintiff waited over a year to file its complaint following the first alleged instance of censorship. As defendants point out, plaintiff's motion for a preliminary injunction was filed on July 1, 2016, yet plaintiff alleges that defendants have been engaging in impermissible censorship since March 2015.  Delays in pursuing an injunction are highly relevant to the claim of irreparable harm.").

**D.    HRDC seeks a mandatory injunction subjecting it to heightened scrutiny.**

Further, HRDC seeks a mandatory injunction, *i.e.*, an order that would change rather than preserve the *status quo*, because it seeks to require Defendants to implement a new procedure for notifying senders of rejected mail. There are three types of preliminary injunctions that are disfavored: (1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than prohibitory, and (3) injunctions that provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005).  In seeking a disfavored injunction, 'the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (internal quotation marks and brackets omitted); *see also Schrier*, 427 F.3d at 1259 (stating that such injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" (internal quotation marks omitted)).

In this case, the injunction sought by Plaintiff should be disfavored for all three reasons. First, the injunction being sought by Plaintiff upsets the status quo in that the request by Plaintiff is for Adams County to veer from its policy and process currently to a new policy and process. The injunctive relief sough by Plaintiff effectively places an affirmative burden on Defendants to immediately institute and implement a new set of policies and procedures. Likewise, the preliminary injunction sought by Plaintiff is mandatory in that places a duty on Defendants to do something that differs from what they are already allegedly doing.  The relief sought by Plaintiffs here is presumably identical to the relief Plaintiffs would seek after a full trial on the merits of the case.  In this regard, Plaintiff's request is subject to this heightened scrutiny.  Under this

8

standard, and as discussed above, Plaintiff has failed to demonstrate that the issuance of a preliminary injunction in this case is proper.

## CONCLUSION

For the foregoing reasons, Defendants Board of County Commissioners for Adams County, Colorado, Sheriff Richard Reigenborn, and Chris Laws request that Plaintiff's Motion for Preliminary Injunction be denied.

DATED: October 9, 2020.                    Respectfully submitted,


*s/Kerri A. Booth*
Kerri A. Booth
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
kbooth@adcogov.org
*Counsel  for Defendants*
*Adams County Board of County Commissioners,*
*Richard Reigenborn, and Chris Laws*

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I caused the foregoing to be electronically filed

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to all counsel of record.

> *s/Kerri A. Booth*
> Kerri A. Booth
> Assistant County Attorney
> Adams County Attorney's Office
> 4430 S. Adams County Pkwy
> 5th Floor, Suite C5000B
> Brighton, CO  80601
> Phone:  (720) 523-6116
> Fax:  (720) 523-6114
> kbooth@adcogov.org
> *Counsel  for Defendants*
> *Adams County Board of County Commissioners,*
> *Richard Reigenborn, and Chris Laws*