## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02665-PAB

HUMAN RIGHTS DEFENSE CENTER,

　　　　　　　Plaintiff,

v.

BOARD OF COUNTY
COMMISSIONERS FOR ADAMS
COUNTY, COLORADO; RICHARD
REIGENBORN, Sheriff, in his official
and individual capacities; CHRIS LAWS,
Jail Division Chief, in his individual
capacity; and DOES 1-10, in their
individual capacities,

　　　　　　　Defendants.

---

## JOINT MOTION FOR ORDER OF DISMISSAL WITH PREJUDICE

---

Plaintiff Human Rights Defense Center ("HRDC") and Defendants Adams County Board
of Commissioners, Richard Reigenborn, and Chris Laws (together with Plaintiff, the "Parties")
have entered into a full and final settlement agreement concerning the Adams County Detention
Facility's (the "Jail") rejection of HRDC publications addressed to incarcerated persons at the Jail
from approximately May 2019 until November 2019.  Pursuant to their agreement and Fed. R.
Civ. P. 41(a)(2), the Parties jointly move this Court for an order of dismissal, with prejudice, of all
of HRDC's claims, except as to any motion filed in this action to enforce the terms set forth below.

### I.　　BACKGROUND

1.　　HRDC is a not-for-profit charitable organization that publishes and distributes two
magazines, *Prison Legal News* and *Criminal Legal News*, and various books on legal issues and
other topics of interest to incarcerated persons. HRDC's core mission is public education,

advocacy, and outreach to assist prisoners who seek legal redress for infringements of their constitutional and human rights. To accomplish its mission, HRDC uses the U.S. Postal Service to mail its publications and other correspondence to persons incarcerated in prisons and jails, including the Jail in Adams County, Colorado.

2.      Defendant Adams County Board of County Commissioners ("BOCC") is the governing body for Adams County, Colorado, a formally constituted political subdivision of the State of Colorado.

3.      Defendant Richard Reigenborn, as the duly elected Sheriff of Adams County, is the final policymaker of the Adams County Sheriff's Office.  Defendant Reigenborn is responsible for operating the Jail.

4.      Defendant Chris Laws is an employee of the Adams County Sheriff's Office and, as Jail Division Chief, he oversees the Jail and various employees and agents responsible for training, supervising, and implementing policies and practices related to mail received by the Jail.

5.      On September 1, 2020, HRDC filed suit under 42 U.S.C. § 1983 against the BOCC, Sheriff Richard Reigenborn, and Jail Division Chief Chris Laws, as well as Does 1-10 (unidentified employees or agents of the Jail), seeking injunctive and declaratory relief, nominal, and compensatory damages, attorneys' fees, and costs. The Complaint alleges that certain Jail policies and practices for the delivery of incoming publications and correspondence to persons incarcerated at the Jail violated HRDC's rights under the First Amendment of the United States Constitution. The Complaint also alleges that the Jail's policies and practices violated the Fourteenth Amendment of the United States Constitution by failing to provide HRDC due process regarding the rejection of its publications and other correspondence.

6.      Contemporaneous with filing its Complaint, HRDC filed a motion seeking preliminarily to enjoin Defendants' ongoing alleged unlawful conduct. (ECF Dkt. 5).  On October 9, 2020, Defendants filed their response to Plaintiff's motion for a preliminary injunction (ECF Dkt. 16), in which Defendants denied any wrongdoing (past or present).  On October 23, 2020, Plaintiff filed a reply (ECF Dkt. 22).  The Court scheduled a preliminary injunction hearing for October 28, 2020.

7.      At the beginning of the October 28, 2020 hearing, the Court asked the Parties' counsel whether, in lieu of proceeding with the hearing at that time, the Parties could "figure out the remaining issues as to the reasons for the Adams County Detention Facility mailroom rejecting a certain percentage of HRDC's publications and then solve the problems by agreement." (*See* ECF Dkt. 24.)  After counsel agreed on the record to explore a potential resolution, the Court ordered the preliminary injunction hearing to be continued indefinitely pending such resolution.

8.      On February 17, 2021, the Parties filed a Stipulation resolving solely the issues raised in HRDC's Motion for Preliminary Injunction.  (ECF Dkt. 32 ).  While negotiating the terms of the Stipulation, the Parties also discussed a potential resolution of the case as a whole.  The Parties have reached a full and final agreement (the "Agreement") to resolve HRDC's claims, the material terms of which are stated below.

## II.      <u>STIPULATED RESOLUTION OF HRDC'S CLAIMS</u>

9.      The Parties, to avoid the expense, delay, uncertainty, and burden of litigation, have agreed to resolve and settle all claims and defenses set forth in the above-captioned action.

10.     The Parties stipulate that this Agreement resolves all substantive claims of relief alleged in HRDC's Complaint.

11.    Nothing in this Agreement is intended to release or waive any claim, cause of action, demand, or defense in law or equity that any party to this Agreement may have against any person or entity not a party to this Agreement.

**A.    Definitions**

12.    "Conditionally-approved publications" refers to paper or paperback printed materials by not-for-profit charitable organizations sent directly from the organization and new, unused non-fiction paperback books mailed directly from a seller or distributor of such books.

13.    "Sender" refers to the organization, distributor, or seller listed as the sender on a publication to an inmate at the Jail.

14.    "Staples" refers to the type of light-duty, small wire staple fasteners commonly used to attach a few sheets of paper, such as those used by Plaintiff to bind the sheets of its magazines.

15.    "Mailing labels" will mean the type of adhesive sticker used by Plaintiff to affix an address to an item of mail.

16.    "Jail" refers to the Adams County Detention Facility currently operated by Defendant Reigenborn and any other correctional facility Defendant Reigenborn or any future Adams County Sheriff may operate in the future.

17.    "Defendants" denotes BOCC, Reigenborn, Laws, and their successors, officers, agents, servants, and employees, and all others in active concert or participation with them.

18.    "Mail Policy" refers to the Jail's written policy about mail practices, a version of which appears under the title "Adams County Detention Facilities [*sic*] Mail Policy" at https://www.adamssheriff.org/sites/default/files/2018-03/inmate_mailing_instructions.pdf.

**B.    Terms of Agreement**

19.    <u>Timely Delivery of Conditionally-approved Publications</u>. Defendants will, without unreasonable delay, deliver conditionally-approved publications addressed to named incarcerated persons currently at the Jail, unless Defendants: (a) make a good-faith determination, on a case-by-case basis, that delivering the mailing threatens Jail safety, security or orderly operations, and (b) upon making such determination, promptly provide the Sender written notice of the specific basis for any such rejection and provide an administrative review process in accordance with Paragraph 24 of this Agreement.

20.    <u>Pre-Approval</u>. Defendants will not: (a) refuse to deliver conditionally-approved publications to incarcerated persons at the Jail only because the addressee did not seek pre-approval from the Jail to receive such mailings; or (b) require incarcerated persons at the Jail to submit a request to the Jail, before the Jail delivers Publisher mailings to the addressee.

21.    <u>Staples</u>. Defendants will not refuse to deliver conditionally-approved publications to incarcerated persons at the Jail only because the publication contains staples. The Defendants may, in their discretion, remove staples from any conditionally-approved publication, as long as such publication is delivered to the addressee in substantially the same condition as it was received in the mail and without undue delay.

22.    <u>Mailing labels</u>. Defendants will not refuse to deliver conditionally-approved publications to incarcerated persons at the Jail only because of mailing labels. Defendants may, in their discretion, remove mailing labels from any conditionally-approved publication, as long as the publication is delivered to the addressee in substantially the same condition as received in the mail and without undue delay.  Removing mailing labels by cutting them from the publication is acceptable.

23.     Notice of rejection.  Each time the Jail does not Deliver a conditionally-approved publication, Defendants will, within fourteen (14) days of receiving the conditionally-approved publication, place in the U.S. Mail a written notice to the Sender of the rejected publication, along with the rejected publication.  The notice shall identify the item not delivered and state, with specificity, the reason(s) why Jail employees or agents did not deliver the mailing to the addressee. The Jail will document the specific details and basis for the rejection to allow anyone considering a subsequent appeal to make a determination.  Defendants will also provide a copy of the notice to any addressee still in Jail custody.  If the Jail rejects a conditionally-approved publication, in whole or in part, because of the publication's contents, if reasonable to do so, the Jail shall maintain a scanned image of the at-issue portion(s) of the rejected publication for review on appeal under Paragraph 24.  In situations where it is not reasonable or feasible for the Jail to preserve an image of all at-issue portions of the rejected publication, the Jail shall maintain sufficient documentation to allow for review on appeal under Paragraph 24, including, but not limited to, a detailed description of the rejected publication (e.g., publication name, author, edition, and date), a citation to the page(s) of the rejected publication that the Jail contends are at issue, and the reason(s) the Jail found it "not reasonable or feasible" to maintain a scanned image of the at-issue portion of the rejected publication.

24.     Administrative Appeal.  Defendants will permit the Sender twenty-one (21) days after mailing the rejection notice to appeal the Jail's decision.  The Sender may initiate an appeal by sending an email to ACSOmailappeal@adcogov.org stating the grounds for the appeal.  Within twenty-one (21) days of receiving the appeal, Defendants will provide to the Sender, in writing, the result of the appeal, including the basis for Defendants' ruling and identifying the appeal's

decision-maker, who will be someone other than the person who originally refused to deliver the publication in question.

25.    Mail Policy.  Within sixty (60) days of this Agreement, Defendants will revise the Jail's Mail Policy and any other pertinent Jail policies or procedures (collectively, the "Policies"), to: (a) remove any requirement for pre-approval to receive conditionally-approved publications and to inform incarcerated persons of the rejection notice and appeal provisions of this Agreement; (b) remove any reference to the prohibition of conditionally-approved publications; and (c) include an explanation of incarcerated persons' right to receive delivery of conditionally-approved publications or notice of any conditionally-approved publication not delivered to them and the reason(s) for the rejection.  The Defendants will post the revised Mail Policy on the Adams County Sheriff's website and provide a written copy to incarcerated persons at the Jail.

26.    Within sixty (60) days of the entry of this Agreement, Defendants agree to notify all relevant Jail personnel of the contents of this Agreement.  Defendants further agree to reasonably monitor the implementation of the Parties' Agreement at the Jail.

27.    Within ninety (90) days of the entry of this Agreement, Defendants shall provide a copy of the Jail's new written Mail Policy to the Plaintiff, and shall file with the Court a certification that it has complied with the provisions of paragraphs 25-26 above.

28.    No person who has notice of this Agreement will disregard it, nor will any person subvert this Agreement by any sham, indirection, or other artifice.

29.    The Parties agree that this case concerns the First and Fourteenth Amendment rights of a publisher and is therefore neither a case concerning prison conditions, as defined in the Prison Litigation Reform Act of 1996, nor a case "brought . . . by a prisoner."  The Parties further agree

that the relief ordered herein is narrowly drawn, extends no further than necessary to correct the harm alleged by Plaintiff, and is the least intrusive means necessary to correct the alleged harm.

**C.    Compensation**

30.    The Court's entry of this enforceable Agreement, together with Defendants' payment to Plaintiff of $115,000, fully and finally resolves all of HRDC's claims. As soon as reasonably possible after the entry of this Agreement as an order, but no later than sixty (60) days after such order, the Parties will execute a mutual release, including a release of all claims alleged in Plaintiff's Complaint, and Defendants will remit payment to Plaintiff. If payment is not made within sixty (60) days of the entry of this Agreement as an order, interest will accrue pursuant to 28 U.S.C. § 1961 from the date of entry of the order.

31.    It is the intent and agreement of the Parties that the Court will retain jurisdiction over this matter for the purpose of enforcement of the Agreement.

32.    Should HRDC move to enforce this Order of Dismissal, such motion shall be considered a "proceeding to enforce a provision of Section 1983" under 42 U.S.C. § 1988, and the attorneys' fees provisions of Section 1988 shall apply.

Wherefore, the Parties jointly request that this Court enter an Order of Dismissal With Prejudice, except as to a motion(s) to enforce the terms of the Order of Dismissal incorporating the entirety of the above.

Dated: _____, 2021.

Respectfully submitted,

s/

BALLARD SPAHR LLP
J. Matt Thornton, #48803
1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: (303) 376-2409
Fax: (303) 296-3956
thorntonj@ballardspahr.com

HUMAN RIGHTS DEFENSE
CENTER
Daniel Marshall
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Fax: (561) 828-8166
dmarshall@hrdc-law.org

*Attorneys for Plaintiff Human
Rights Defense Center*

s/
Kerri A. Booth
Kasandra Carleton
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO 80601
Telephone: (720) 523-6116
Fax: (720)523-6114
kbooth@adcogov.org
KCarleton@adcogov.org

*Attorneys for Defendants*

Agreed to by:

**HUMAN RIGHTS DEFENSE CENTER**

Pavl wRight

Name (printed)

executive Director

Title

Signature

5/10/2021

Date

**ADAMS COUNTY BOARD OF COMMISSIONERS**

Name (printed) _Eva J. Henry_

Title _Chair_

Signature _[signature]_

Date _May 13, 2021_

**SHERIFF RICHARD REIGENBORN**

_Richard A Reigenborn_
Name (printed)

_Sheriff_
Title

_[signature]_
Signature

_03/05/2021_
Date

**JAIL DIVISION CHIEF CHRIS LAWS**

_Chris Laws_
Name (printed)

_Division Chief_
Title

_C.R. Laws 1903_
Signature

_050521_
Date